1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MALCOLM STRICKLAND,                        No.  2:22-cv-0898-DC-SCR

12                    Plaintiff,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14    A. JENKINS, et al.,

15                    Defendants.

16

17          Plaintiff is a former state prisoner proceeding without an attorney in this civil rights action

18   filed pursuant to 42 U.S.C. § 1983.  This case is proceeding on plaintiff's first amended complaint

19   alleging an Eighth Amendment sexual assault claim against defendant Jenkins and a First

20   Amendment retaliation claim against defendants Janam and Jenkins.  Currently pending before

21   the court is defendants' motion for summary judgment which has been fully briefed by the

22   parties.  ECF Nos. 42, 50, 54.  For the reasons explained below, the undersigned recommends that

23   the motion be granted, in part, and denied in part.

24        **I.        Allegations in the First Amended Complaint[1]**

25          While an inmate at Mule Creek State Prison ("MCSP"), plaintiff alleges that Correctional

26

---

27   [1]  The allegations in the amended complaint may be construed as an affidavit in opposition to
     summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure when they are
28   made under penalty of perjury.  See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

                                                    1

1   Officer Jenkins approached him outside his building door for no reason.  ECF No. 9 at 3.

2   Defendant Jenkins told plaintiff to put his hands behind his back.  ECF No. 9 at 3.  He then pulled

3   plaintiff's pants and underwear open and commented "not bad for a white guy."  Id.  This caused

4   plaintiff mental anguish.

5           On June 8, 2022, plaintiff further alleges that defendant Jenkins left his assigned post and

6   came to plaintiff's building with Correctional Officers Janam and Rich.[2]  ECF No. 9 at 3-4.

7   Defendant Janam unnecessarily searched plaintiff's cell to retaliate against him for submitting a

8   grievance against Jenkins' sexual assault.  Id. at 4.  Plaintiff asked why his cell was being

9   searched and defendant Janam responded that "Jenkins told us you put a lawsuit on him, and he

10  wants us to hit your cell."  Id. at 5.  Later that same day, when plaintiff was walking to the

11  program office, defendant Jenkins stated that he "got your little civil suit filed against me, ain[']t

12  nothin' gonna happen."  Id. at 4.  As a result of this retaliatory cell search, plaintiff's First

13  Amendment rights were chilled.  Id.

14          **II.    Motion for Summary Judgment**

15          Defendants move for summary judgment because they contend the undisputed material

16  facts demonstrate that defendant Jenkins' October 2021 clothed body search of plaintiff did not

17  violate the Eighth Amendment; the June 8, 2022 cell search was based on the presence of

18  contraband and not done in retaliation for plaintiff's First Amendment protected activities; and,

19  defendants are entitled to qualified immunity.  ECF No. 42.  Specifically, defendant Jenkins

20  contends that his search of plaintiff did not constitute sexual assault because he "did not pull

21  Plaintiff's pants down, expose Plaintiff's genitalia, touch his genitalia, or make any lewd

22  comments about his body."  ECF No. 42-1 at 7.  Defendants further contend that they were not

23  aware of this lawsuit or any grievance that plaintiff filed before the June 8, 2022 search of

24  plaintiff's cell that was conducted for a legitimate penological purpose.  ECF No. 42-1 at 7.  With

25  regard to qualified immunity, defendants assert that "it was not clearly established that on

26  October 30, 2021, a brief, clothed body search of an inmate based on an officer's reasonable

27

28  [2]  Defendant Rich was dismissed from this lawsuit by order dated October 19, 2023.  ECF No. 27.

1  suspicion of the inmate's possession of contraband, even if accompanied by a sexually suggestive

2  comment, constituted an Eighth Amendment violation." ECF No. 42-1 at 14. Additionally, a

3  reasonable officer in defendant Janam's position would not have understood that the cell search

4  violated the First Amendment when it was based on smelling inmate manufactured alcohol. ECF

5  No. 42-1 at 15.

6      In an unverified opposition, plaintiff contends that defendant Jenkins is not entitled to

7  summary judgment because plaintiff did not pass contraband prior to the clothed body search nor

8  was any contraband found on his person as a result of the search. ECF No. 50 at 2-3. Plaintiff

9  also disputes that defendants were delivering mail to his unit on June 8, 2022 prior to his cell

10 search or that "they could smell pruno from 50 feet away." ECF No. 50 at 5. Defendants were

11 aware of the complaints being filed against them and they told plaintiff as much while conducting

12 the cell search. Id.

13     By way of reply, defendants point out that plaintiff does not offer a statement of disputed

14 facts or address defendants' separate statement of undisputed facts in support of summary

15 judgment. ECF No. 54. Plaintiff's unsworn opposition is just speculation and does not offer any

16 evidence demonstrating a genuine issue of disputed fact regarding the Eighth Amendment sexual

17 assault or First Amendment retaliation claims against defendants. Defendants challenge

18 plaintiff's lay opinion argument that defendants would not have been able to smell the odor of

19 alcohol from 50 feet away because there is no foundation nor evidence to support this assertion.

20 ECF No. 54 at 4. Furthermore, plaintiff does not challenge defendant Janam's sworn declaration

21 about his training in detecting odors of inmate-manufactured alcohol. ECF No. 54 at 4. For all

22 these reasons, defendants request that their summary judgment motion be granted.

23     **III.    Legal Standards**

24     **A. Summary Judgment Standards**

25     Summary judgment is appropriate when it is demonstrated that there "is no genuine

26 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

27 Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

28 "citing to particular parts of materials in the record, including depositions, documents,

1    electronically stored information, affidavits or declarations, stipulations (including those made for

2    purposes of the motion only), admissions, interrogatory answers, or other materials….”  Fed. R.

3    Civ. P. 56(c)(1)(A).

4            Summary judgment should be entered, after adequate time for discovery and upon motion,

5    against a party who fails to make a showing sufficient to establish the existence of an element

6    essential to that party’s case, and on which that party will bear the burden of proof at trial.  See

7    Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  “[A] complete failure of proof concerning an

8    essential element of the nonmoving party’s case necessarily renders all other facts immaterial.”

9    Id.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party

10   to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec.

11   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

12   existence of this factual dispute, the opposing party generally may not rely upon the allegations or

13   denials of their pleadings but is required to tender evidence of specific facts in the form of

14   affidavits, and/or admissible discovery material, in support of its contention that the dispute exists

15   or show that the materials cited by the movant do not establish the absence of a genuine dispute.

16   See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

17   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

18   suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

19   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

20   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

21   for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.

22   1987).  In the endeavor to establish the existence of a factual dispute, the opposing party need not

23   establish a material issue of fact conclusively in its favor.  It is sufficient that “the claimed factual

24   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25   trial.” T.W. Elec. Serv., 809 F.2d at 631.  Thus, the “purpose of summary judgment is to ‘pierce

26   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.’”

27   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

28   amendments).

4

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Eighth Amendment Sexual Abuse Standards**

The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const., amend. VIII. At its core, the Eighth Amendment protects against intrusions that offend "the basic concept of human dignity." Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). A valid sexual assault claim pursuant to the Eighth Amendment is established when a prisoner proves that a prison official, "acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct" for the prison official's "own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020). The objective component of the Eighth Amendment is met when "the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the [search] procedure." Bearchild, 947 F.3d at 1145 (recognizing that an Eighth Amendment sexual assault claim includes both a subjective and objective component). When the prisoner can establish that a sexual assault was committed by a prison guard, courts "presume the guard acted maliciously and sadistically for the very purpose of causing harm, and the subjective component of the Eighth Amendment claim is satisfied." Bearchild, 947 F.3d at 1144.

**C. First Amendment Retaliation Standards**

"Within the prison context, a viable claim of First Amendment retaliation entails five

5

1  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

2  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

3  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

4  correctional goal.  Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted).

5  Filing an inmate grievance is a protected action under the First Amendment.  Bruce v. Ylst, 351

6  F.3d 1283, 1288 (9th Cir. 2003).

7      **IV.    Undisputed Material Facts[3]**

8      **A.    Clothed Body Search**

9          In late October 2021, defendant Jenkins was providing visual coverage of the evening

10  medication pass for the C-yard clinic when he observed plaintiff walking past his assigned

11  housing unit in Building 15.[4]  Plaintiff's Deposition at 22:17 (April 16, 2024); Declaration of A.

12  Jenkins at ¶ 2.  Defendant Jenkins observed plaintiff meet with another inmate between Buildings

13  14 and 15, where they appeared to exchange something.  Defendants' Separate Statement of

14  Undisputed Facts, at ¶ 3 (hereinafter "DSSUF").  Based on his belief that plaintiff had exchanged

15  contraband, defendant Jenkins walked up to plaintiff as he waited to enter Building 15 to conduct

16  a clothed body search.  DSSUF at ¶ 4.  When plaintiff looked at defendant Jenkins, he moved his

17  hands towards his mouth which prompted defendant Jenkins to believe that he placed something

18  inside his mouth.  DSSUF at ¶ 5.

19          Defendant Jenkins' clothed body search of plaintiff consisted of "lightly patting

20  [p]laintiff's torso, waist area, arms, legs, and sock areas to feel for any bulges or items underneath

21  his clothes."  Jenkins' Declaration at ¶ 4.  Part of the search also involved asking plaintiff to open

22  his mouth for inspection.  DSSUF at ¶ 12.  According to defendant Jenkins, he also briefly pulled

23  open plaintiff's waistband of his pants to see if any contraband would fall out.  Jenkins'

24  Declaration at ¶ 4.  This search did not yield any contraband and lasted approximately 20-30

25  seconds.  DSSUF at ¶¶ 13-14.

26  ////

27  _____

28  [3]  All facts are undisputed unless otherwise indicated.
    [4]  Neither plaintiff nor defendant recall the specific date.

1    According to defendant Jenkins, he did not pull plaintiff's pants down, remove his

2    underwear, expose his genitals, nor touch plaintiff's genitals.  Jenkins' Declaration at ¶ 4.

3    Defendant Jenkins also disputes making any lewd comment to the effect of "Not bad for a white

4    guy."  Jenkins' Declaration at ¶ 4.  Defendant Jenkins disputes that the purpose of the search was

5    to harass plaintiff.  Jenkins' Declaration at ¶ 6.  Instead, defendant Jenkins indicates that the

6    search was conducted to stop the potential spread of contraband which threatens the safety and

7    security of the prison and its staff.  Jenkins' Declaration at ¶ 6.

8    On October 30, 2021, plaintiff submitted inmate grievance Log No. 181707, stating that

9    defendant Jenkins had sexually abused and humiliated him during this clothed body search.

10   DSSUF at ¶ 16.

11   After plaintiff had completed the administrative grievance process related to the October

12   2021 search, he constructively filed the original complaint in this action by giving it to prison

13   officials for mailing on May 17, 2022.  ECF No. 1 at 6; Plaintiff's Deposition at 42:18-43:5.  The

14   complaint named Jenkins as a defendant based on his October 2021 clothed body search of

15   plaintiff.  ECF No. 1 at 3.  The original complaint was dismissed with leave to amend on June 30,

16   2022 and was not served on defendants at that time.  ECF No. 5 (screening order).  According to

17   defendants, they were not aware of either plaintiff's administrative grievance or his original

18   complaint as of June 8, 2022.  Janam's Declaration at ¶ 15; Jenkins' Declaration at ¶¶ 10-11.

19   They did not become aware of the instant lawsuit until September or October 2022.  Id.  Plaintiff

20   disputes this based upon his sworn statement in the amended complaint that both defendants

21   admitted to him on June 8, 2022 that they were aware that he had filed this lawsuit against

22   defendant Jenkins.

23        **B.    Cell Search**

24   On June 8, 2022, defendant Janam entered Building 15 at MCSP to deliver the mail.

25   DSSUF at ¶ 21.  In the course of delivering mail, defendant Janam smelled the odor of inmate

26   manufactured alcohol, for which he had received training in recognizing its distinctive odor, what

27   materials are used to make it, and where inmates typically hide it.  Janam's Declaration at ¶ 5.

28   He traced the smell to plaintiff's cell on the second tier.  Janam's Declaration at ¶ 7.  Plaintiff

1    disputes that such an odor could be smelled from outside of his cell. Plaintiff's Deposition at

2    82:5-7. According to defendant Janam, he was not directed by anyone to search plaintiff's cell.

3    Janam's Declaration at ¶ 13. His search was based entirely on the smell of alcohol coming from

4    plaintiff's cell. Id.

5         After defendant Janam asked for plaintiff's cell door to be opened, he smelled a "pungent

6    fermented odor consistent with inmate manufactured alcohol." Janam's Declaration at ¶ 8.

7    Defendant Janam and Correctional Officer Rich then searched plaintiff's cell. DSSUF at ¶ 23.

8    Defendant Janam ultimately discovered and confiscated two ten-gallon plastic bags of a reddish

9    brownish liquid with chunks and pulps of apples, which is consistent with inmate manufactured

10   alcohol. Janam's Declaration at ¶ 8-9. These plastic bags were concealed under blankets in

11   plaintiff's cell. Id. Defendant Janam was aware that both rotten fruit and plastic bags are used by

12   inmates to manufacture alcohol. Janam's Declaration at ¶¶ 5-6. After Correctional Officer J.

13   Soares verified that the liquid was inmate manufactured alcohol based on its odor and appearance,

14   defendant Janam disposed of the alcohol. Janam's Declaration at ¶ 10-11. Defendant Janam

15   wrote out a cell search receipt indicating that he confiscated two ten-gallon bags of inmate

16   manufactured alcohol and gave it to plaintiff. DSSUF at ¶ 28; ECF No. 42-5 at 6 (cell search

17   receipt).

18        During his deposition, plaintiff admitted possessing contraband in his cell on June 8,

19   2022. Plaintiff's Deposition at 77:11-12. Based on CDCR regulations, inmates are not allowed

20   to possess ten-gallon plastic bags or inmate manufactured alcohol. DSSUF at ¶¶ 29-30. The

21   mere possession of two ten-gallon bags of rotten fruit is considered prison contraband because it

22   is unsanitary. DSSUF at No. 32. Prison officials are not required to submit inmate manufactured

23   alcohol for lab testing to be verified because of its distinctive odor and color. DSSUF at ¶ 33.

24        Even though he was assigned to Building 14, defendant Jenkins entered Building 15 on

25   June 8, 2022 to speak with Correctional Officer Rich at the podium. Jenkins' Declaration at ¶ 7.

26   Defendant Jenkins did not participate in the cell search, but he did observe defendant Janam

27   searching plaintiff's cell and removing two bags of inmate manufactured alcohol from it.

28   Jenkins' Declaration at ¶ 8. Defendant Jenkins denies ordering or colluding with defendant

1    Janam or anyone else to have plaintiff's cell searched that day.  Id. at ¶ 9.  At no time did

2    defendant Jenkins speak to plaintiff during the search.  Id. at ¶ 9.

3        **V.    Analysis**

4        The undersigned finds that defendants have met their initial burden of informing the court

5    of the basis for the motion, and identifying those portions of the record which they believe

6    demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to

7    plaintiff to establish the existence of a genuine issue of material fact with respect to his claims.

8    See Matsushita Elec. Indus., 475 U.S. at 586 (1986).

9        Drawing all reasonable inferences from the evidence submitted in plaintiff's favor,

10   plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with

11   respect to his claim that defendant Jenkins sexually assaulted him in violation of the Eighth

12   Amendment.  Plaintiff does not even allege that the clothed body search was done for defendant

13   Jenkins' sexual gratification.  Nor does he explain how it exceeded the scope of a search for

14   contraband.  See Bearchild, 947 F.3d at 1145 (emphasizing that when the disputed conduct began

15   as a procedure that served a legitimate penological purpose, "the prisoner must show that the

16   guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern

17   justified the initiation of the procedure."); see also Brewster v. Mills, 2022 WL 976973, at *4

18   (N.D. Cal. Mar. 31, 2022) (finding that a defendant who "swiped" plaintiff's buttocks "a little bit"

19   in the process of tightening handcuffs on plaintiff after a shower did not amount to a sexual

20   assault under Bearchild because of the penological purpose of affixing handcuffs and because

21   plaintiff failed to demonstrate how defendant had exceeded the scope of that purpose).  Although

22   plaintiff indicates that he felt humiliated as a result, the relevant Eighth Amendment inquiry is

23   whether defendant's touching was done for the purpose of humiliating or degrading plaintiff.

24   Bearchild, 947 F.3d at 1144.  Therefore, plaintiff's focus on his emotional injury, which the court

25   does not discount, does not establish a genuine dispute that defendant subjectively intended this

26   result.  See Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012) (explaining that "[a]n

27   unwanted touching of a person's private parts, intended to humiliate the victim or gratify the

28   assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force

9

1    exerted by the assailant is significant"). Thus, a jury could not reasonably find that defendant

2    Jenkins sexually assaulted plaintiff during the October 2021 search. As a result, defendant

3    Jenkins is entitled to summary judgment on this claim.[5]

4         With respect to the First Amendment retaliation claim against defendants, there is a

5    genuine issue of material dispute concerning whether defendants' conduct was because of

6    plaintiff's protected activity in filing a lawsuit against defendant Jenkins.[6] Plaintiff included a

7    sworn statement in his amended complaint that defendants told him that they were aware of his

8    lawsuit on the day of his cell search. See Shepard v. Quillen, 840 F.3d 686 (9th Cir. 2016)

9    (reversing the grant of summary judgment to a prison official who transferred an inmate to

10   administrative segregation for making a staff misconduct report when there was record evidence

11   casting doubt on the non-retaliatory reason for the transfer). Although defendant Jenkins made

12   his statement to plaintiff after the cell search was completed, the undisputed material facts

13   demonstrate that he was present in plaintiff's housing unit prior to the cell search even though he

14   was not assigned to work there. A rational juror could find that the timing of his presence in

15   plaintiff's housing unit on June 8, 2022 is circumstantial evidence of the retaliatory basis for the

16   search. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). Defendants' declarations

17   submitted in support of summary judgment deny knowledge of the lawsuit at that point in time.

18   However, plaintiff's testimony that both defendants made comments about his lawsuit on the day

19   of the search would be admissible at trial as an admission by a party opponent. See Fed. R. Evid.

20   801(d)(2). Therefore, when the evidence is viewed in the light most favorable to plaintiff, there

21   remains a genuine issue of material dispute concerning defendants' motive in conducting a cell

22   search.

23        Although defendant Jenkins does not present a legitimate correctional basis for his

24   presence in plaintiff's housing unit prior to the cell search, defendant Janam's declaration

25   _____

[5] In the interests of judicial economy, the undersigned declines to address the qualified immunity
26   argument with respect to this claim.

[6] The parties do not dispute that a cell search may constitute an adverse action for purposes of a
27   First Amendment retaliation claim. Nor is there any dispute that plaintiff's lawsuit against
defendant Jenkins amounts to protected First Amendment activity or that his speech was actually
28   chilled. Therefore, the court does not address these factors.

1    indicates that he smelled inmate manufactured alcohol.  Plaintiff then bears the burden of proving

2    the absence of legitimate correctional goals for defendant's challenged conduct.  See Pratt, 65

3    F.3d at 806 (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).  If defendant Janam

4    searched plaintiff's cell because he smelled inmate manufactured alcohol, that would, of course,

5    constitute a legitimate correctional goal supporting the search.  However, as explained above,

6    plaintiff has come forward with admissible evidence that the cell search was initiated for a

7    retaliatory purpose rather than a legitimate correctional goal.  A rational jury could conclude that

8    defendant Janam's discovery of inmate manufactured alcohol allowed defendant Janam to

9    concoct a post hoc justification for the search of plaintiff's cell.  See Shepard, 840 F.3d at 690-

10   691 (finding that there were inconsistencies in defendant's explanation for his conduct that a jury

11   could determine was "pretextual" and was used "as a cover or a ruse to silence and punish"

12   plaintiff).  Based on this genuine dispute, it is up to a jury to determine whether defendant

13   Janam's cell search was motivated by the odor of inmate manufactured alcohol or plaintiff's

14   protected activity.  See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (concluding that

15   plaintiff's protected conduct must be the "substantial" or "motivating" factor for defendant's

16   conduct).

17          Defendants also submit that they are entitled to summary judgment on the First

18   Amendment retaliation claim based on qualified immunity.  In analyzing a qualified immunity

19   defense, the court must consider: (1) whether the alleged facts, taken in the light most favorable

20   to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right;

21   and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v.

22   Katz, 533 U.S. 194, 201 (2001).  Having determined that there is a genuine dispute concerning

23   whether defendants' conduct violated plaintiff's First Amendment rights, the only remaining

24   question is whether this constitutional right was clearly established as of June 8, 2022.  See

25   Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002) (explaining that the rights-violation prong of

26   the qualified immunity analysis "mirrors the substantive summary judgment decision on the

27   merits").  A prisoner's right to be free from punitive actions for filing grievances or pursuing civil

28   rights litigation against prison officials was "clearly established law" in the Ninth Circuit for

1  qualified immunity purposes prior to the cell search in the instant case.  See Chavez v. Robinson,

2  12 F.4th 978, 1001 (9th Cir. 2021) (quoting Pratt, 65 F.3d at 806).  Accordingly, the undersigned

3  recommends denying defendants' motion for summary judgment on the First Amendment

4  retaliation claim on the basis of qualified immunity.

5          **VI.    Plain Language Summary for Pro Se Party**

6          Because you are representing yourself in this case, the court wants to make sure that you

7  understand this order. The following information is meant to explain this order in plain English

8  and is not intended as legal advice.

9          The court has reviewed the pending motion for summary judgment, as well as the

10  evidence submitted by the parties, and has concluded that the facts of the Eighth Amendment

11  sexual assault claim against defendant Jenkins are not in sufficient dispute to warrant a trial.

12  However, there is a sufficient factual dispute about the First Amendment retaliation claim against

13  defendants to justify a jury trial on that claim only.

14          If you disagree with these recommendations, you have twenty one days to explain why

15  they are not correct.  Label your explanation as "Objections to Magistrate Judge's Findings and

16  Recommendations."  The district judge assigned to your case will make the final decision.

17          **VII.    Conclusion**

18          IT IS HEREBY RECOMMENDED that the motion for summary judgment (ECF No. 42)

19  be granted as to plaintiff's Eighth Amendment sexual assault claim against defendant Jenkins, but

20  denied as to the First Amendment retaliation claims against defendants.

21          These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty one days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

26  objections shall be filed and served within fourteen days after service of the objections.  The

27  ////

28  ////

12

1    parties are advised that failure to file objections within the specified time may waive the right to

2    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: July 21, 2025

4

5

6                                    SEAN C. RIORDAN
                                     UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28